IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD THORNE, | ) | CASE NO. 1:14-cv-01696 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Richard Thorne ("Plaintiff" or "Thorne") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")

denying his applications for social security disability benefits.  Doc. 1.  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate

Judge pursuant to the consent of the parties. Doc. 12.   As explained more fully below, the

Administrative Law Judge did not consider all relevant evidence and/or failed to fully explain

her reasons for providing no weight to a treating source opinion when she assessed medical

evidence relating to Thorne's alleged COPD[1] and when she concluded that Thorne's condition

had not worsened since his prior disability decision.  Thus, this Court is unable to conduct a

meaningful review of the decision to assess whether the decision is supported by substantial

evidence.  Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision

for further proceedings.

---

[1] COPD is the acronym for Chronic Obstructive Pulmonary Disease.

## I.      Procedural History

### A.      Prior applications

Thorne previously filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in 2006, 2007, and 2008.  Tr. 592, 641.  With respect to the 2008 applications, on October 29, 2010, Administrative Law Judge Julia A. Terry ("ALJ Terry") found that Thorne had the following severe impairments: history of drug and/or alcohol addiction in sustained remission, a depressive disorder, an anxiety disorder, a personality disorder.  Tr. 644.  ALJ Terry also found that Thorne's hypertension and asthma, when considered in combination, were severe.  Tr. 644.  ALJ Terry issued an unfavorable decision finding that Thorne had not been under a disability from June 2, 2005, through the date of her decision. Tr. 641-650.  ALJ Terry found that Thorne had the RFC to perform medium work, defined as lifting and carrying 50 pounds occasionally and 25 pounds frequently; his ability to sit, stand and walk was not impaired but must have only limited superficial contact with others; and he could work in view of the public but must have no interaction with the public.  Tr. 646.

### B.      Current applications

Thorne protectively filed applications for DIB and SSI on November 19, 2010.[2]  Tr. 592, 657, 795, 799, 829.  He alleged a disability onset date of October 30, 2010.  Tr. 592, 657, 795, 799, 829.  He alleged disability due to schizophrenia, manic depression, and physical impairments.[3]  Tr. 657, 723, 741, 834.  Thorne's applications were denied initially and upon

---

[2] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application."  http://www.socialsecurity.gov/agency/glossary/ (last visited 8/21/2015).

[3] The record does not clearly state what specific physical impairments were alleged but the state agency indicated that, in addition to his mental impairment claim, Thorne's "claim was also developed for physical impairments."  Tr. 723, 741.

reconsideration by the state agency (Tr. 723-736, 741-753) and Thorne requested an administrative hearing (Tr. 754-755).   On January 17, 2013, Administrative Law Judge Penny Loucas ("ALJ Loucas" or "ALJ") conducted an administrative hearing.  Tr. 607-637.

In her January 17, 2013, decision, ALJ Loucas found that Thorne had the following severe impairments: history of drug and/or alcohol addiction, a depressive disorder, anxiety disorder, personality disorder, asthma, and tobacco disorder.  Tr. 595.  ALJ Loucas found that Thorne's hypertension was a non-severe impairment.  Tr. 595.  ALJ Loucas determined that Thorne had not been under a disability from October 30, 2010, through the date of the decision.  Tr. 589-606.  As discussed in further detail below, in reaching her determination, the ALJ found that the record contained new evidence but that the new evidence did not support a finding that Thorne's condition had materially changed since ALJ Terry's October 29, 2010, decision.  Tr. 592-593.  Thus, ALJ Loucas adopted ALJ Terry's Residual Functional Capacity ("RFC") assessment made in connection with Thorne's prior application pursuant to Acquiescence Rulings 98-3(6) and 98-4(6) and *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Secretary of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990).  Tr. 592-593, 600.

Thorne requested review of the ALJ's decision by the Appeals Council.  Tr. 587-588.  On May 30, 2014, the Appeals Council denied Thorne's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 560-564.

## II. Evidence

### A.    Personal, educational and vocational evidence

Thorne was born in 1959.  Tr. 795, 799.  Thorne completed school through 11th grade.  Tr. 834.  He was 53 years old at the time of the hearing.  Tr. 612.  He was not married and had

no children.  Tr. 626-627.  He last worked as a maintenance worker and window washer in 2008.

Tr. 615, 835.

**B.**     **Medical opinion evidence[4]**

     **1.**     **Physical impairments**

_Treating source_

On January 8, 2013, treating source James Diekroger, M.D., provided a Medical Source

Statement regarding Thorne's physical capacity.  Tr. 1171-1172.  Dr. Diekroger opined that,

based on "severe COPD – visible hyperinflation on x-ray – wheezing," Thorne had the following

limitations: (1) he could only occasionally lift/carry 25 pounds and could frequently lift/carry no

weight; (2) he could stand/walk for a total of 30 minutes in an 8-hour workday;[5] (3) he could

rarely perform postural activities such as climbing, balancing, stooping, etc.; (4) he could rarely

reach, push/pull, or perform fine and gross manipulation; (5) his ability to be exposed to heights,

moving machinery, temperature extremes, and pulmonary irritants was restricted; and (6) he

would need to be able to alternate positions between sitting, standing, and walking at will.  Tr.

1171-1172.  Dr. Diekroger also opined that Thorne's "need to use inhaled medications

periodically" would interfere with "work 8 hours a day, 5 days a week."  Tr. 1172.

_Reviewing physicians_

On April 5, 2011, state agency reviewing physician W. Jerry McCloud, M.D., completed

a physical RFC assessment.  Tr. 664-665.  Dr. McCloud opined that Thorne could lift and/or

carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-

hour workday and sit about 6 hours in an 8-hour workday; and his ability to push and/or pull was

---

[4] Additional medical opinions, not summarized herein, were rendered as part of Thorne's prior disability applications. Additional medical evidence related to Thorne's arguments raised in this appeal is discussed in further detail below.

[5] Dr. Diekroger opined that Thorne's ability to sit was not affected by his impairment, opining that Thorne could sit for a total of 8 hours in an 8-hour workday and sit for 6 hours without interruption.  Tr. 1171.

unlimited, except as indicated for lift/carry.   Tr. 665.  Dr. McCloud found no other restrictions or limitations.  Tr. 665.

On September 7, 2011, upon reconsideration, state agency reviewing physician Leanne M. Bertani, M.D., completed a physical RFC assessment.  Tr. 692-693.  Dr. Bertani offered the same opinions as Dr. McCloud.  Tr. 692-693.

### 2.    Mental impairments

#### *Treating source*

Having treated Thorne for mental health issues for a number of years (Tr. 968 (July 2010), Tr. 966 (December 2010), Tr. 964 (January 2011), Tr. 1028 (May 2011)), on January 9, 2012, Dr. Jaina Amin, M.D., completed a Medical Source Statement regarding Thorne's mental capacity.  Tr. 1083-1084.  Dr. Amin rated Thorne in 21 categories.[6]  Tr. 1083-1084.  In the 12 "making occupational adjustments" categories, Dr. Amin rated Thorne "poor" in 10 categories and "fair" in 2 categories.  Tr. 1083-1084.  In the 3 "intellectual functioning" categories, Dr. Amin rated Thorne "poor" in 2 categories and "fair" in 1 category.  Tr. 1084.  In the 6 "making personal and social adjustment" categories, Dr. Amin rated Thorne "poor" in 4 categories and "fair" in 2 categories.  Tr. 1084.  In explaining her opinion, Dr. Amin stated "Pt lives in an isolated state in his home.  A neighbor brings him to & from medical appts due to high anxiety around people & thus can't take the bus sys." Tr. 1084.

Thorne continued treatment with Dr. Amin throughout 2012 (Tr. 1087 (May 2012), Tr. 1137 (June 2012), Tr. 1135 (August 2012), Tr. 1133 (October 2012)) and, on or about October

---

[6] The rating choices were "unlimited or very good," "good," "fair," or "poor."  Tr. 1083.  "Poor" was described as "[a]bility to function is significantly limited" and "fair" was described as "[a]bility to function in this area is moderately limited but not precluded [and] [m]ay need special consideration and attention."  Tr. 1083.

29, 2012,[7] Dr. Amin completed forms for Ohio Job and Family Services. Tr. 1155-1158. Dr. Amin's diagnoses included major depression, moderate and recurrent; generalized anxiety disorder; and panic attacks without agoraphobia. Tr. 1155. Dr. Amin noted that Thorne's health status was poor but stable. Tr. 1155. Dr. Amin stated that Thorne was continuing to struggle with depression, anxiety, and isolating himself in his home. Tr. 1155. Thorne was also having problems with his sleep. Tr. 1155. His mood was down and he was sad and tearful. Tr. 1155. He was having panic attacks a couple of times per week with increasing shortness of breath and COPD which in turn increased his anxiety. Tr. 1155. In 20 categories relating to understanding and memory; sustained concentration and persistence; social interaction; and adaptation, Dr. Amin rated Thorne markedly impaired in 18 categories and moderately impaired in 2 categories. Tr. 1156. Dr. Amin also opined that Thorne's "high anxiety & depression prevent him from consistently leaving the house. This would affect reg attendance @ work." Tr. 1157.

 _Reviewing physicians_

On April 5, 2011, state agency reviewing psychologist Caroline Lewin, Ph.D., completed a Psychiatric Review Technique and Mental RFC assessment. Tr. 662-664, 665-667. Dr. Lewin opined that Thorne had moderate restrictions/difficulties in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. Tr. 663. Dr. Lewin opined that Thorne had no understanding and memory limitations and no adaptation limitations. Tr. 665, 666. Dr. Lewin opined that Thorne did have some limitations in the area of sustained concentration and persistence and in the area of social interaction. Tr. 665-666. Overall, Dr. Lewin opined that Thorne "should be able to handle most instructions, concentrate short term,

---

[7] The date on the form is listed as the "date of last exam." Tr. 1156, 1158.

and handle routine stress as long as he is only occasionally around coworkers and should avoid being around the public."  Tr. 667.

On August 16, 2011, upon reconsideration, state agency reviewing psychologist Karla Voyten, M.D., completed a Psychiatric Review Technique and Mental RFC assessment.  Tr. 690-692, 693-695.  Dr. Voyten offered the same opinions as Dr. Lewin.  Tr. 690-692, 693-695.

## C.    Testimonial evidence

### 1.    Plaintiff's testimony

Thorne was represented and testified at the administrative hearing.  Tr. 611-632, 633. Thorne indicated that, as of 2009, he was unable to work because of his mental health and breathing issues.  Tr. 614.

With respect to his mental health issues, he said he has anxiety, loses his concentration, and has problems with his memory.  Tr. 616-620.  Thorne does not like going out in public or taking public transportation.  Tr. 623-624.  When Thorne is out in public he feels as though others are talking about him or he is afraid someone will say something leading to something happening and he does not want to go back to jail.[8]  Tr. 624.  Thorne's sister drives him places. Tr. 624.  When Thorne gets scared or anxious, he gets panic attacks and can hardly breathe.  Tr. 624.  He has to lie down and try to calm himself down.  Tr. 624-625.  Thorne was seeing Dr. Amin for his mental health issues every two to three months.  Tr. 623.

With respect to his breathing problems, Thorne uses two inhalers and nebulizer treatments throughout the day.  Tr. 625-626.  For his breathing treatments he uses Spiriva and Albuterol.  Tr. 626.  He uses the Spiriva once a day and Albulterol about every four to five hours.  Tr. 626, 630-631.  Thorne indicated that he cannot walk up a hill or up the street without needing to use his inhaler and do a treatment.  Tr. 625.  He gets short of breath just walking short

---

[8] Thorne was incarcerated three different times for what he described were "Dumb mistakes, ignorant."  Tr. 614.

distances or around his house.  Tr.  627, 630.  He tries to help with chores around the house but gets out of breath and has to sit down after a short period of trying to do things.  Tr. 628, 632. Thorne sometimes wakes from a nap and is unable to breathe.  Tr. 626, 627.  When Thorne is out in the cold, he can hardly breathe and coughs.  Tr. 628.  When he is coughing, he has pain in his chest and stomach.  Tr. 628.

### 2.    Vocational Expert's testimony

 Vocational Expert ("VE") Larry Takki testified at the hearing.  Tr. 632-636.   The VE described Thorne's past work as a window washer and maintenance worker as unskilled, medium level work.  Tr. 632.

In her first hypothetical question, the ALJ asked the VE to assume an individual of similar age, education and work history as Thorne who could engage in medium exertion work; is limited to superficial contact with others; and can work in view of the public but must have no interaction with the public.  Tr. 633.  The VE indicated that the described individual could perform both of Thorne's past jobs.  Tr. 633.

In her second hypothetical, the ALJ asked the VE to assume an individual who could perform medium exertion work; stand/walk 6 hours a day maximum; sit 6 hours a day maximum; would have no limitation with respect to understanding and memory for instructions but can maintain concentration, persistence and pace only for unskilled work; should avoid interaction with the general public; can interact up to occasionally with coworkers and supervisors for receiving instructions and speaking, but should avoid work that requires him to work in tandem with others to get the job done; and limited to routine work with few changes and that does not require strict production quotas or machine-paced-driven type work.  Tr. 633-

634.  The VE indicated that the second described individual would also be able to perform both of Thorne's past jobs.  Tr. 634.

In her third hypothetical, the ALJ asked the VE to assume an individual described in the second hypothetical but who would also have the following environmental limitations: no exposure to cold, humidity and respiratory irritants for two-thirds or more of a day.  Tr. 634.  The VE indicated that the described individual would not be able to perform Thorne's past work as a window washer but would be able to perform his past work as a maintenance worker.  Tr. 634-635.

In her fourth hypothetical, the ALJ asked the VE to assume an individual described in the third hypothetical except that the individual would be limited to light level work.  Tr. 635.  The VE indicated that the following jobs would be available to the described individual: (1) collator operator; (2) office cleaner; and (3) price marker.[9]  Tr. 635-636.  The ALJ noted that, if the hypothetical individual was limited to sedentary level work, he would grid out.  Tr. 636.

In response to Thorne's counsel's questioning, the VE indicated that, being off task more than 15 percent of the time due to the need to take at least 2 unscheduled breaks during the day to use a nebulizer machine,[10] would have a negative impact on the availability of jobs.  Tr. 636.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[9] The VE provided state and national job incidence data for each of the three jobs identified. Tr. 635-636.

[10] The VE noted that the reason for the break, i.e., the need to use a nebulizer, was not a determinative factor.  Tr. 636.  Rather, it was the amount of time that an individual would be off task.  Tr. 636.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[11] . . . .

42 U.S.C. § 423(d)(2)(A).

 In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.   If the claimant is doing substantial gainful activity, he is not disabled.

2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[12] claimant is presumed disabled without further inquiry.

4.   If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

---

[11] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

[12] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

20 C.F.R. §§ 404.1520, 416.920;[13] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors

to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In her January 17, 2013, decision, the ALJ made the following findings:[14]

1.     Thorne meets the insured status requirements through September 30, 2012.  Tr. 595.

2.     Thorne has not engaged in substantial gainful activity since October 30, 2010, the alleged onset date.  Tr. 595.

3.     Thorne has the following severe impairments: history of drug and/or alcohol addiction; a depressive disorder; anxiety disorder; personality disorder; asthma; and tobacco use disorder.[15]  Tr. 595-596.

4.     Thorne does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 596-597.

5.     Thorne has the RFC to perform medium work with the ability to lift and carry 50 pounds occasionally and 25 pounds frequently; his ability to sit, stand and walk is not impaired but he must have only limited and superficial contact with others; he can work in view of the public but must have no interaction with the public.  Tr. 597-600.

6.     Thorne is capable of performing his past relevant work as a window washer and maintenance worker.  Tr. 600-601.

---

[13] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[14] The ALJ's findings are summarized.

[15] The ALJ found Thorne's hypertension was a non-severe impairment.  Tr. 595-596.

Based on the foregoing, the ALJ determined that Thorne had not been under a disability from October 30, 2010, through the date of decision.  Tr. 601.

## V. Parties' Arguments

Thorne argues that the ALJ improperly adopted ALJ Terry's RFC assessment because there was evidence of a new severe impairment, i.e., COPD, which the ALJ did not properly consider when evaluating whether his condition had worsened since the last disability decision (Doc. 15, pp. 14-17) and because the ALJ erred in evaluating the medical opinions offered by Dr. Amin and Dr. Diekroger (Doc. 15, pp. 17-20).  Thus, Thorne contends that the ALJ's RFC is not supported by substantial evidence and reversal and remand is warranted for further proceedings. Doc. 15, p. 20.

In response, the Commissioner argues that the ALJ considered the COPD evidence and correctly determined that Thorne's condition had not worsened since ALJ Terry's decision and therefore properly adopted ALJ Terry's RFC.  Doc. 18, pp. 9-25.  The Commissioner further contends that the ALJ properly considered and weighed the medical opinion evidence and that substantial evidence supports the RFC assessment.  Doc. 18, pp. 9-25.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Thorne argues that the ALJ improperly applied *Drummond* when she adopted the findings of ALJ Terry who rendered the prior disability decision on October 29, 2010. Doc. 15, p. 2, n. 1; Doc. 15, pp. 14-17.

**A.** *Drummond* **rule**

In *Drummond v. Comm'r of Soc. Sec*, the Sixth Circuit stated that, "[a]bsent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d 837, 842 (6th Cir. 1997) (relying in part on *Dennard v. Secretary of Health & Human Serv.*, 907 F.2d 598, 600 (6th Cir. 1990), stating that the court in *Dennard* "held that a second ALJ was precluded from reconsidering whether plaintiff Dennard could perform his past relevant work.").

The Social Security Administration acquiesced in the *Drummond* decision. *See* Acquiescence Ruling 98-4(6), 1998 WL 283902 (June 1, 1998) ("AR 98-4(6)") (addressing how

the Social Security Administrative will apply the *Drummond* decision).[16]  In explaining how the Social Security Administration would apply *Drummond*, in AR 98-4(6), the Social Security Administration stated that, "[w]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding."  *Id* at *3; *see also* AR 98-3(6).

In order to avoid the *res judicata* effect of *Drummond*, a claimant must present new and material evidence demonstrating that his condition worsened. *Drogowski v. Comm'r of Soc. Sec.*, 2011 WL 4502988, * 8 (E.D. Mich July 12, 2011)(relying on *Casey v. Sec. of Health and Human Servs.*, 987 F.2d 1230, 1232-1233 (6th Cir. 1993)), *report and recommendation adopted, 2011 WL 4502955, * 3 (E.D. Mich. Sept. 28, 2011)*; *see also Salsgiver v. Comm'r of Soc. Sec.*, 20120 WL 2344095, * 12 (N.D. Ohio June 20, 2012) ("Plaintiff must not merely present new and material evidence, but that evidence must show that plaintiff's condition *deteriorated* from the state of her condition at the time the ALJ made the decision.") (quoting *Drogowski*, 2011 Wl 4502988, * 8); *see also Thomas v. Comm'r of Soc. Sec.*, 2014 WL 3845797, * 9 (N.D Ohio Aug. 5, 2014).

**B.      The  ALJ's application of *Drummond***

On October 29, 2010, ALJ Julia A. Terry issued a decision finding that, among other severe impairments, Thorne's asthma and hypertension, when considered in combination, were

---

[16] The Social Security Administration also acquiesced in the *Dennard* decision.  *See* Acquiescence Ruling 98-3(6), 1998 WL 283901 (June 1, 1998) ("AR 98-3(6)") (addressing how the Social Security Administrative will apply the *Dennnard* decision).

severe. Tr. 644. With respect to Thorne's asthma, ALJ Terry stated that "medical evidence indicates the claimant sometimes requires an albuterol inhaler to control his exercise-induced asthma." Tr. 644. There was no discussion or mention of COPD.

ALJ Terry concluded that Thorne had the RFC to perform medium work, defined as lifting and carrying 50 pounds occasionally and 25 pounds frequently; his ability to sit, stand, and walk was not impaired, but he had to have only limited and superficial contact with others; and he could work in view of the public but could have no interaction with the public. Tr. 646.

In her January 17, 2013, decision, ALJ Loucas stated the following regarding ALJ Terry's 2010 decision:

> The findings in the October 29, 2010 hearing decision, regarding the claimant's functional ability and the ability to perform past work and/or other work, have been evaluated in accordance with Social Security Acquiescence Rulings 98-3(6) and 98-4(6). In the absence of new and additional evidence or changed circumstances, a subsequent Administrative Law Judge is bound by findings of a previous Administrative Law Judge decision. Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997); Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Cir. 1990). Although the record contains new evidence, it does not support a finding that the claimant's condition has materially changed since the last ALJ decision. In particular, there is no evidence of a worsening of the claimant's condition. Consequently, I am adopting the residual functional capacity of the October 29, 2010 Administrative Law Judge decision.

Tr. 592-593.

ALJ Loucas also stated:

> I am hereby adopting the residual functional capacity of the October 29, 2010 Administrative Law Judge decision and give the same weight for the medical opinions as Julia A. Terry, Administrative Law Judge, with respect to Cynthia Waggoner, Psy.D.; Dominic Gomes, M.D.; Jaina Amin, M.D.; Melody Bettasso, a social worker; David House, Ph.D.; and Eduardo Vasquez, M.D. (Exhibits B1A, B1F, B11F, B17F). In January 2012, the claimant was able to move all 4 extremities and had no edema (B6F/4, B14F/2). Leanne Bertani, M.D., and Karla Voyten, Ph.D., employees of the state agency, determined that the claimant was limited to occasional lifting and/or carrying 50 pounds, 25 pounds frequently. I am hereby incorporating by reference the October 29, 2010 Administrative Law Judge decision to the extent that it is consistent with this decision (Exhibit B1A).

Tr. 600.

**C.      Reversal and remand is warranted because the ALJ did not consider all relevant evidence when concluding that there was no worsening of Thorne's condition and/or when providing no weight to Dr. Diekroger's opinion**

Thorne contends that the evidence demonstrates that his condition worsened after ALJ

Terry's 2010 decision and argues that ALJ Loucas failed to consider a large portion of the

evidence that supports a diagnosis of COPD and his inability to perform a full range of medium

work.  Doc. 15, pp. 14-17.  Thorne also argues that the ALJ improperly dismissed Dr.

Diekroger's opinion on the basis that there was no diagnostic evidence to support a diagnosis of

COPD. Doc. 15, pp. 19-20.

"[A]n ALJ is not required to discuss every piece of medical opinion evidence." *Karger v.

Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 753 (6th Cir. 2011).  However, "[a]n ALJ is bound to

adhere to certain governing standards when assessing the medical evidence in support of a

disability claim." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citing

*Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir.2004)). "Chief among these is the rule

that the ALJ must consider all evidence in the record when making a determination, including all

objective medical evidence, medical signs, and laboratory findings."  *Id.* (citing 20 C.F.R. §

404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513).  The Regulations provide that

the Commissioner "will always consider the medical opinions in . . . [a claimant's] case record

together with the rest of the relevant evidence . . . receive[d]." 20 C.F.R. § 416.927(b).

To support his arguments, Thorne points to evidence dated after ALJ Terry's October 29,

2010, decision showing that he was diagnosed with and treated for COPD.   Doc. 15, pp. 14-15

(citing Tr. 1045-1058, 1059-1064, 1066-1072, 1089-1108, 1138-1154, 1159-1163).  On October

25, 2011, Thorne presented to the emergency room with complaints of rib pain, sharp right-sided

chest pain, and shortness of breath.  Tr. 1045-1058.  A chest x-ray was obtained, which showed "mild hyperinflation [of] lungs suggesting emphysema. . . without an acute cardiopulmonary process."  Tr. 1054.  The emergency room physician indicated that the chest x-ray was unremarkable but indicated that Thorne's physical examination was "remarkable for uncomfortable appearing male; splinting on R w/diffuse wheezing."  Tr. 1046.  The attending physician assessed COPD exacerbation and musculoskeletal right chest wall strain and treatment included Albuterol and Prednisone.  Tr. 1046.

On October 28, 2011, Thorne presented again to the emergency room with continuing pain and coughing.  Tr. 1059.  The emergency room assessment was rib pain and bronchitis.  Tr. 1060.  Thorne was back at the emergency room on October 31, 2011, with continuing pain and coughing.  Tr. 1066.  On examination, Thorne exhibited "coarse breath sounds throughout, no crackles appreciated but difficult with breath sounds, some wheezing."  Tr. 1068.  The emergency room physician assessed COPD exacerbation along with hypertension, rib pain, and tobacco use disorder.  Tr. 1068.

On January 9, 2012, Thorne was seen at the emergency room for coughing and right-sided rib pain.  Tr. 1089.  Thorne reported a history of bronchitis with symptoms occurring during a change of seasons.  Tr. 1089.  He described his cough as moderate in severity and constant.  Tr. 1089.  He was using Albuterol treatments.  Tr. 1089.  On examination, there was no evidence of respiratory distress but there was diffuse expiratory wheezing.  Tr. 1090.  A January 9, 2012, chest x-ray showed no acute process (Tr. 1091, 1098) and his emergency room physician assessed acute bronchitis and chest wall strain (Tr. 1091).

On August 12, 2012, Thorne presented to the emergency room with complaints of shortness of breath, coughing, and sharp pain in his right side.  Tr. 1138.  An August 12, 2012,

chest x-ray showed that Thorne's lung fields were hyperinflated, with the impression noted as "COPD.  No superimposed acute process."  Tr. 1148.  On examination, Thorne exhibited diffuse mild expiratory wheezing.  Tr. 1139.  The emergency room physician assessed shortness of breath, COPD and low platelets.  Tr. 1139.

On October 16, 2012, Thorne saw Dr. James Diekroger, M.D., of the Neighborhood Family Practice, for follow up regarding his COPD.  Tr. 1159-1162.  Thorne reported "having steadily increasing SOB, esp[ecially] w/exertion."  Tr. 1160.  Medication, including Albuterol 3-4 times per day, had helped some.  Tr. 1160.  Thorne also reported coughing with chest pain.  Tr. 1160.  On examination, Dr. Diekroger noted diffuse mild to moderate wheezing.  Tr. 1161.  Dr. Diekroger assessed COPD and recommended adding long acting medication and that Thorne continue to work on cutting down on cigarettes.  Tr. 1161.

The ALJ acknowledged that Thorne had been diagnosed with COPD but stated that there was no diagnostic evidence to support the COPD diagnosis.  Tr. 598.  In reaching her conclusion, the ALJ indicated that there was no pulmonary function test in the file and she relied on a January 2012 chest x-ray, stating the results of that x-ray showed no "findings consistent with COPD."  Tr. 598-599.  The ALJ appears, however, not to have considered at all and/or she dismissed without explanation diagnostic evidence that was indicative of COPD.   For example, the August 12, 2012, chest x-ray, reflected the impression: "COPD.  NO superimposed acute process" (Tr. 1148) but the ALJ ignored and did not explain why this diagnostic evidence was not a sufficient corroboration of a diagnosis of COPD.

In addition to Thorne's treatment for his respiratory symptoms and the August 12, 2012 x-ray, the opinion offered by Dr. Diekroger, which contains limitations restricting Thorne to less than medium level work, was new and material evidence worthy of the ALJ's consideration

18

when determining whether there was a worsening of Thorne's respiratory problems since ALJ Terry's October 29, 2010, decision.  Tr. 1171-1172.  Dr. Diekroger treated Thorne for COPD in October 2012[17] (Tr. 1159-1163) and, on January 8, 2013, Dr. Diekroger opined that, due to "severe COPD – visible hyperinflation on x-ray, wheezing," Thorne would be limited to occasional lifting and carrying of 25 pounds; limited to standing for 30 minutes in an 8-hour workday; would be able to sit without interruption for 6 hours in an 8-hour workday and sit for a total of 8 hours in an 8-hour workday; limited to rarely performing postural activities, such as climbing, balancing, stooping, etc.; limited to rarely performing reaching, pushing/pulling, and fine and gross manipulation; would be subject to environmental limitations, such as no exposure to heights, moving machinery, etc.; and would require the ability to alternate between sitting, standing, and walking at will.  Tr. 1171-1172.

The ALJ considered and gave no weight to Dr. Diekroger's opinion.  Tr. 599.  In providing no weight to Dr. Diekroger's opinion, the ALJ took issue with the fact that Dr. Diekroger's limitations were based on Thorne's COPD but there was no diagnostic evidence to corroborate a diagnosis of COPD.[18]  Tr. 599.   However, Dr. Diekroger specifically stated that his limitations were based on "visible hyperinflation on x-ray" (Tr. 1171), which is consistent with the August 12, 2012, chest x-ray findings that the ALJ did not discuss or explain.  *See* Tr. 1148 ("findings" section of the August 12, 2012, chest x-ray states, "Lung fields are hyperinflated").

Without a discussion by the ALJ regarding whether or how she considered the August 12, 2012, chest x-ray when concluding (a) that Dr. Diekroger's opinion was entitled to no weight

---

[17] The ALJ indicates that Thorne started seeing Dr. Diekroger in May 2012.  Tr. 599.  However, it appears that is incorrect. Thorne saw Dr. Diekroger in October 2012.  Tr. 1159-1162.  Thorne saw a nurse practitioner at Neighborhood Family Practice in May 2012.  Tr. 1166-1168.

[18] The ALJ also indicated that Dr. Diekroger had only started seeing Thorne in May 2012.  Tr. 599.

and (b) that there was no worsening of Thorne's medical condition since the October 29, 2010, ALJ decision, the Court is unable to conduct a meaningful review to assess whether the ALJ's assignment of no weight to the opinion of Dr. Diekroger is supported by substantial evidence and/or whether the ALJ's decision to apply *Drummond* and adopt the October 29, 2010, RFC is supported by substantial evidence.[19]  Accordingly, reversal and remand is warranted for further articulation regarding the ALJ's consideration of the evidence relating to Thorne's alleged COPD, including Dr. Diekroger's opinion,[20] as well as the ALJ's basis for applying *Drummond*.

---

[19] The ALJ gave some weight to the opinion of the state agency reviewing physician Leanne M. Bertani, M.D., who opined that Thorne could lift and/or carry 50 pounds occasionally and 25 pounds frequently and could stand and/or walk for 6 hours in an 8-hour workday and could sit for 6 hours in an 8-hour workday.  Tr. 599-600, 692-693. However, Dr. Bertani rendered her opinion on September 7, 2011, prior to the evidence regarding Thorne's treatment for COPD and prior to Dr. Diekroger's opinion.  The Commissioner contends that the fact that Dr. Bertani's opinion was rendered prior to Thorne's COPD diagnosis is of no consequence because the ALJ only gave some weight to Dr. Bertani's opinion and because the ALJ considered the COPD diagnosis.  Doc. 18, p. 18. However, as discussed, the ALJ did not consider all relevant evidence respecting Thorne's COPD.

[20] Thorne also contends that the ALJ failed to properly weigh and provide good reasons for discounting the opinions of his treating psychiatrist, Dr. Amin, dated January 9, 2012 (Tr. 1083-1084), and October 29, 2012 (Tr. 1155-1158).  Doc. 15, pp. 18-20.  Thorne argues that the ALJ did not assign weight to Dr. Amin's opinions or provide sufficient analysis of her opinions or treatment records.  Doc. 15, pp. 17-19.  The ALJ indicated that she was assigning the same weight to Dr. Amin's opinions as ALJ Terry had assigned, i.e., partial weight.  Tr. 600, 649. Also, the ALJ explained that she found Dr. Amin's poor or marked restrictions in every facet of functioning not supported by objective findings and/or inconsistent with his activities of daily living.  Tr. 600.  While brief, the ALJ sufficiently addressed Dr. Amin's opinions and explained the weight assigned to those opinions and Thorne has not shown those reasons to be unsupported by the record.  Accordingly, further articulation regarding Dr. Amin's opinions is not required on remand.

## VII. Conclusion

For the reasons set forth herein, the Court **REVERSES and REMANDS** the

Commissioner's decision for further proceedings.[21]

August 24, 2015

Kathleen B. Burke
United States Magistrate Judge

---

[21] This opinion should not be construed as requiring a determination on remand that Thorne is disabled.